**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

OLIVER ELOY MATA VELASQUEZ

*Petitioner*,

v.

STEPHEN KURZDORFER, in his official capacity as
Acting Field Office Director, Buffalo Field Office,
Enforcement and Removal Operations, U.S.
Immigration & Customs Enforcement; JOSEPH
FREDEN, in his official capacity as Deputy Field
Office Director of the Buffalo Federal Detention
Facility; TODD LYONS, in his official capacity as
Acting Director U.S. Immigrations and Customs
Enforcement; and KRISTI NOEM, in her official
capacity as U.S. Secretary of Homeland Security; U.S.
Department of Homeland Security; U.S. Immigrations
and Customs Enforcement,

*Respondents*.

Case No. _____

**VERIFIED PETITION**
**FOR WRIT OF HABEAS**
**CORPUS AND**
**COMPLAINT**

## INTRODUCTION

1.      This case concerns the illegal courthouse arrest and the illegal subsequent detention

of petitioner Oliver Eloy Mata Velasquez—a nineteen-year-old asylum seeker and citizen of

Venezuela. Oliver has done everything the government has asked him to: he followed the process

the United States established for people seeking asylum to present at the border on a certain date;

he appeared on that date, at which point the government decided to release him while he applied

for asylum; he lawfully entered the United States where he reunited with family; he applied for

and was granted permission to work; and, critically, he attended his immigration court proceedings

at the time and location directed. When he attended immigration court on May 21, 2025 for a

routine hearing, he expected to be able to proceed with an application for asylum in those

1

proceedings. Instead, the government arrested him and is attempting to summarily remove him before he can meaningfully access relief through those proceedings.

2.      Oliver's arrest and detention are wholly unjustified and unrelated to any individualized consideration of Oliver's circumstances. In the time he has lived in the United States, Oliver has done all he can to integrate into his community, begin to learn English, and lawfully work. He plainly is not a flight risk—as evidenced by his dutiful appearance at his scheduled immigration court date, nor is he a danger to the community. Rather, Oliver was arrested and detained, along with countless others over the past two weeks, as part of a nationwide campaign to summarily arrest law-abiding non-citizens like Oliver when they attend their immigration court hearings.

3.      The purpose of this campaign is to facilitate the transfer of immigration proceedings for non-citizens like Oliver from typical removal proceedings (commonly referred to as Section 240 proceedings) governed by 8.U.S.C.§ 1229(a)—where non-citizens are afforded procedural rights—into "expedited removal" pursuant 8 U.S.C. § 1225(b)(1)—a process that is initiated outside of immigration court and deprives non-citizens of the procedural protections built into Section 240 proceedings.

4.      Oliver's arrest and ongoing detention are causing him immense harm. Prior to his May 21, 2025 arrest, Oliver had never been criminally arrested or placed in detention. Since arriving at the Buffalo Federal Immigration Detention Center ("BFDF"), he has not been able to sleep. He has been separated from his family and support network and fears that he will be sent back to Venezuela—where he was abandoned by his parents and from where he seeks asylum.

5.      Oliver respectfully asks this Court to hold that his arrest was unlawful, to hold that his continued detention is unlawful, and to order his release from custody. Oliver also respectfully

asks that this Court order Respondents not to transfer him outside of the District for the duration of this proceeding.

6.    Every day Oliver spends in detention subjects him to further irreparable harm. Immediate relief is necessary to ensure that Oliver is no longer subjected to continued violations of his substantive and procedural rights.

## **PARTIES**

7.    Petitioner Oliver Eloy Mata Velasquez is a nineteen-year-old Venezuelan national seeking asylum in the United States.

8.    Respondent Stephen Kurzdorfer is sued in his official capacity as Acting Field Office Director, Buffalo Field Office, Enforcement and Removal Operations, U.S. Immigration & Customs Enforcement. Respondent Kurzdorfer is a legal custodian of Oliver.

9.    Respondent Joseph Freden is sued in his official capacity as Deputy Field Office Director of the Buffalo Federal Detention Facility. Respondent Freden is a legal custodian of Oliver.

10.    Respondent Todd Lyons is sued in his official capacity as Acting Director U.S. Immigrations and Customs Enforcement. As the Acting Director of ICE, Respondent Lyons is a legal custodian of Oliver

11.    Respondent Kristi Noem is sued in her official capacity as Secretary of Homeland Security. As the head of the Department of Homeland Security, the agency tasked with enforcing immigration laws, Secretary Noem is Oliver's ultimate legal custodian.

## **BACKGROUND**

*A. Legal Framework of Removal Proceedings*

12.     Section 240 removal proceedings provide non-citizens with an opportunity to be heard in full immigration court hearings before an Immigration Judge. 8 U.S.C. § 1229a sets out the procedures and rights afforded to non-citizens in Section 240 removal proceedings. These include: "the privilege of being represented . . . by counsel of the alien's choosing who is authorized to practice in such proceedings" 8 U.S.C. § 1229a(4)(A) and "a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(4)(B).

13.     Decisions made by "Immigration Judges may be appealed to the Board of Immigration Appeals." 8 C.F.R. § 1003.38(a). Final orders of removal may be appealed to the Federal Court of Appeals for the judicial circuit in which the respective Section 240 proceedings terminate. *See* 8 U.S.C. § 1252.

14.     When Oliver was arrested after his immigration court hearing, his case was progressing through Section 240 proceedings.

15.     The statutorily guaranteed procedures and rights in Section 240 proceedings are significantly more expansive than those available to non-citizens designated for expedited removal under 8 U.S.C. § 1225.

16.     Unlike Section 240 proceedings, expedited removal is a process that begins—and often concludes—outside of immigration court. Non-citizens subjected to expedited removal are ordered removed by an immigration officer "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i).

17.    The lone exception to this rule is that if a non-citizen indicates an intention to apply for asylum or a fear of persecution, the officer "shall refer the alien for an interview by an asylum officer" to conduct a credible fear interview. 8 U.S.C § 1225(b)(1)(A)(i)-(ii). If the asylum officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I). Upon a non-citizen's request, an immigration judge shall expeditiously review a determination "that the alien does not have a credible fear of persecution." 8 U.S.C. § 1225(b)(1)(B)(iii)(III).

18.    If a non-citizen passes a credible fear interview, they are permitted to apply for asylum through Section 240 proceedings. *See* 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. § 208.30(f).

*B.  Expansion of Expedited Removal*

19.    Since expedited removal was created nearly three decades ago, federal immigration authorities have focused the use of expedited removal in limited circumstances: to non-citizens who are seeking admission at a port of entry, who have been apprehended near the border shortly after they entered the country, or who arrive in the United States by sea.

20.    However, on January 21, 2025, DHS issued a Federal Register Notice, to be published in the Federal Register on January 24, 2025, that authorizes the application of expedited removal to certain non-citizens arrested anywhere in the country who cannot show "to the satisfaction of an immigration officer" that they have been continuously present in the United States for longer than two years. U.S. Dep't of Homeland Sec., Designating Aliens for Expedited Removal (Jan. 21, 2025), https://public-inspection.federalregister.gov/2025-01720.pdf ("Rule"). The effective date of the Rule was January 21, 2025.

21.     As a result, non-citizens who have resided in the country for less than two continuous years are at imminent risk of deportation without any hearing or meaningful review, regardless of their ties to the United States, or the availability of claims for relief from and defenses to removal. Even individuals who are not properly subject to expedited removal (for example, U.S. citizens or individuals who have been continuously present for more than two years)—or to removal at all—can be summarily removed if they are unable to affirmatively prove those facts to the satisfaction of an immigration officer.

C. *Campaign of Courthouse Arrests*

22.     Prior to the new Trump Administration, ICE had a policy of minimizing arrests at courthouses, including at immigration courts, as well as a longstanding practice of refraining from conducting civil arrests of non-citizens in and around immigrations.

23.     A Memorandum to ICE and U.S. Customs and Border Protection ("CBP") from the Acting Director of ICE, with the subject line, "Civil Immigration Enforcement Actions in or near Courthouses" and dated April 27, 2021 (hereinafter "April 27, 2021 Memo") directed ICE officers to only conduct "civil immigration enforcement action . . . in or near a courthouse if (1) it involves a national security threat, or (2) there is an imminent risk of death, violence, or physical harm to any person, or (3) it involves hot pursuit of an individual who poses a threat to public safety, or (4) there is an imminent risk of destruction of evidence material to a criminal case." April 27, 2021 Memo,                                                                                      ICE https://www.ice.gov/sites/default/files/documents/ciEnforcementActionsCourthouses2.pdf.    "In the absence of a hot pursuit," ICE may make civil arrests against "an individual who poses a threat to public safety" and only if "(1) it is necessary to take the action in or near the courthouse because a safe alternative location for such action does not exist or would be too difficult to achieve the

enforcement action at such a location, and (2) the action has been approved in advance by a Field Office Director, Special Agent in Charge, Chief Patrol Agent, or Port Director." *Id*. The April 27, 2021 Memo covered "immigration courts." *Id*.

24.    One of the core principles underlying the April 27, 2021 Memo was that "[e]xecuting civil immigration enforcement actions in or near a courthouse may chill individuals' access to courthouses, and as a result, impair the fair administration of justice." *Id*. at 1.

25.    But ICE reversed course in 2025, implementing a new policy ("the Immigration Courthouse Arrest Policy") that not only permits the expansion of civil immigration arrests in and around courthouses, but actively targets non-citizens attending required hearings for civil arrest in and around immigration courthouses.

26.    On or around January 20, 2025, ICE rescinded the April 27, 2021 Memo and issued another Memorandum to all ICE employees with the subject line, "Interim Guidance: Civil Immigration Enforcement Actions in or near Courthouses" (hereinafter "January 20, 2025 Memo"). This new guidance allowed "ICE officers or agents [to] conduct civil immigration enforcement actions in or near courthouses when they have credible information that leads them to believe the targeted alien(s) is or will be present at a specific location, and where such action is not precluded by laws imposed by the jurisdiction in which the enforcement action will take." January    20,    2025    Memo,    ICE,    at    2, https://www.ice.gov/doclib/foia/policy/11072.3_CivilImmEnfActionsCourthouses_01.21.2025.p df. However, the January 20, 2025 Memo states that "ICE officers and agents should generally avoid enforcement actions in or near courthouses, or areas within courthouses that are wholly dedicated to non-criminal proceedings (e.g. family court, small claims court)" unless such is

operationally necessary or there is approval from the Field Office Director or the Special Agent in Charge. *Id*. at 3.

27.     The January 20, 2025 Memo thus dramatically expands civil immigration arrests by ICE officers at courthouses across the country. Further, the January 20, 2025 Memo does not discuss the potential of immigration enforcement in or near courts to chill access to courts and impair the fair administration of justice. *See id*. at 1. Instead, the January 20, 2025 Memo asserts that enforcement at or near courthouses "can reduce safety risks to the public, targeted alien(s), and ICE officers and agents" and is required "when jurisdictions refuse to cooperate with ICE, including when such jurisdictions refuse to honor immigration detainers and transfer aliens directly to ICE custody." *Id*.

28.     The January 20, 2025 Memo was revised and made final on May 27, 2025 through a Memorandum issued by the Acting Director of ICE, with the subject line, "Civil Immigration Enforcement Actions In or Near Courthouses" (hereinafter "May 27, 2025 Memo"). May 27, 2025 Memo, ICE, https://www.ice.gov/doclib/foia/policy/11072.4.pdf. The May 27, 2025 Memo is substantively the same as the January 20, 2025 Memo, except it removed a line limiting civil immigration arrests in courthouses "where such action is not precluded by laws imposed by the jurisdiction in which the enforcement action will take." *Compare* January 25, 2025 Memo, at 2 *with* May 27, 2025 Memo, at 2. Thus, the May 27, 2025 Memo allows ICE to conduct civil immigration arrests at courthouses even if such arrests would violate local or state law.

29.     In the past weeks, the government has undertaken an aggressive new enforcement initiative at immigration courts throughout New York and nationwide. This initiative specifically targets people who are in Section 240 removal proceedings, where they are pursuing asylum and other relief before an IJ, and whom the government believes to be subject to the expansion of

expedited removal. The initiative has three basic components. *First*, DHS is moving to dismiss removal proceedings, with no advance notice, when individuals appear in immigration court for a master calendar hearing (the equivalent of an arraignment or pretrial conference in criminal court), on the grounds that such proceedings are no longer in the best interests of the government. *Second*, pursuant to the new Immigration Courthouse Arrest Policy, ICE officers—in coordination with DHS trial attorneys—are stationing themselves in immigration court, including in the hallways or even in courtrooms, depending on the location, so that they can immediately arrest and detain individuals upon conclusion of their court hearings. *Finally*, in cases where the IJ has granted the government's motion to dismiss, the government has placed individuals in expedited removal.

30.    This initiative is unprecedented. DHS has confirmed publicly that they are targeting individuals they believe are subject to the expansion of expedited removal in order to move them from regular removal proceedings to expedited removal.[1] Moreover, this new initiative appears to be driven by the Trump Administration's imposition of a new daily quota of 3,000 ICE arrests.[2]

31.    As a result of this new initiative, including the new Immigration Courthouse Arrest Policy, there has been unparalleled change in ICE's immigration enforcement at immigration courts throughout the country, including in New York. While civil immigration arrests were previously infrequent, if not entirely unheard of, in immigration courts prior to this new initiative, such civil arrests of non-citizens are now occurring at extremely high and alarming rates.[3]

---

[1] Bill Melugin, X (May 22, 2025 3:15 p.m.), https://x.com/BillMelugin_/status/1925640464415314255.
[2] Cameron Arcand, *Trump administration sets new goal of 3,000 illegal immigrant arrests daily*, Fox News (May 29, 2025), https://www.foxnews.com/politics/trump-administration-aims-3000-arrests-illegal-immigrants-each-day.
[3] *See* J. Dale Shoemaker, ICE raids immigration court in Buffalo, Investigative Post (May 22, 2025), https://www.investigativepost.org/2025/05/22/ice-raids-immigration-court-in-buffalo/; Hamed Aleaziz, et. al., *How ICE Is Seeking to Ramp Up Deportations Through Courthouse Arrests*, New York Times (May 30, 2025), https://www.nytimes.com/2025/05/30/us/politics/ice-courthouse-arrests.html.

## STATEMENT OF FACTS

32.    Oliver Eloy Mata Velasquez was born on April 2, 2006, in Venezuela. He was abandoned by his biological mother and never had a relationship with his biological father.  Oliver did—for a period of time—stay with his maternal grandparents. However, his maternal grandparents were forced to relocate because the family was targeted based upon their perceived political opinions.

33.    In 2024, Oliver came to the United States to seek safety. Following a lawful process that was in place in 2024, Oliver applied to enter the United States through the CBPOne application and received an appointment to come to the United States to present his application for asylum.

34.    On September 13, 2024, Oliver presented at the border for his CBPOne appointment and told the immigration official he was seeking asylum in the United States. The border official decided to permit him entry and that he could pursue his claims out of detention. Oliver was served a Notice to Appear (NTA) requiring that he appear before the Executive Office of Immigration Review (Office of the Immigration Judge) on May 21, 2025, at the Buffalo Immigration Court, 130 Delaware Street, Suite 300, Buffalo, New York 14202. That same day, he was granted discretionary humanitarian parole.

35.    Soon thereafter, Oliver went to live with a family member in the Buffalo area, where he applied for an employment authorization document (EAD) and a social security number. He received the EAD and a social security number.

36.    On March 25, 2025, the Department of Homeland Security published a notice in the Federal Register that it was terminating the categorial parole programs for individuals such as Oliver, who sought humanitarian parole after fleeing Venezuela. 90 Fed. Reg. 13,611 (March 25,

2025). In this notice, the federal government asserted that the INA confers upon the Secretary of Homeland Security sole discretion to terminate an individual's parole. *Id.*

37.    Pursuant to the NTA, Oliver—as directed by the government—appeared before the Buffalo Immigration Court on May 21, 2025. The Immigration Judge adjourned the case to February 4, 2026, to allow Oliver to obtain legal counsel and to prepare and file an application for asylum.

38.    Oliver left the courtroom, located on the third floor of the Buffalo Courthouse and took the elevator to the lobby of the Immigration Court. After exiting the elevator, he was approached in the lobby of the Immigration Court by four immigration enforcement agents who—without any prior notice or warning—arrested him. The officers had paperwork, but it was in English, which he does not read. Upon information and belief, the government immigration agents who arrested him were officers with ICE.

39.    Oliver was taken from the Bufalo Immigration Court to the BFDF on May 21, 2025, where he remains today as of the date of the filing of this Petition. Prior to May 21, 2025, Oliver had *never* been in a detention or carceral setting and, upon information and belief, has never been arrested in the United States and/or in Venezuela.

40.    On May 28, 2025, Respondent Kurzdorfer, the Acting Field Office Director, issued a letter in English only—even though Oliver only speaks and reads in Spanish—that terminated his parole pending the outcome of his removal proceedings.

41.    On May 28, 2025, the Department of Homeland Security (DHS) filed a motion to dismiss Oliver's removal proceedings. In their motion, the government wrote that "the Department has reviewed the facts and circumstances of the case and determined that circumstances after

issuance of the Notice to Appear have changed to such an extent that continuation is no longer in the best interest of the government. 8 C.F.R. §§ 1239.2(c), 239.2(a)(7) and (c)."

42.     On June 2, 2025, RFK Human Rights filed a notice of appearance with the Immigration Court. Upon information and belief, Oliver's immigration case was transferred from the Buffalo Immigration Court to the Batavia Immigration Court.

43.     On June 4, 2025, RFK Human Rights sent an email to the ICE Batavia and Assistant Field Office Director Peter N. Sukmanowski that RFK Human Rights was Oliver's legal counsel and that legal counsel should be present at all meetings with ICE and/or its subcontractors and should be present at all meetings with any consulates.  A G28 was included in the email.

44.     On June 6, 2025, despite a hearing date not being set by the Batavia Immigration Court, an Immigration Judge granted DHS's motion to dismiss. RFK Human Rights filed an appeal of the Immigration Judge's grant of the DHS's motion to dismiss. Upon information and belief, DHS moved to dismiss the immigration removal proceedings that were pending and that would permit Oliver to apply for asylum in order to subject him to expedited removal from the United States.

45.     Upon information and belief, Oliver is also eligible for Special Immigrant Juvenile Status. "Congress created Special Immigrant Juvenile Status to alleviate 'hardships experienced by some dependents of United States juvenile courts by providing qualified aliens with the opportunity to apply for special immigrant classification and lawful permanent resident status, with possibility of becoming citizens of the United States in the future." 58 Fed. Reg. 42,843, 42,844 (Aug. 12, 1993).

## JURISDICTION AND VENUE

46.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 2241 (habeas corpus).

47.    Venue is proper in the Western District of New York under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this district. Venue is also proper under 28 U.S.C. § 2241(d) because Oliver is detained at a facility within this district.

48.    Administrative exhaustion is unnecessary because it would be futile.

## CAUSES OF ACTION

### FIRST CLAIM

**Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution (Substantive Due Process); 5 U.S.C. §§ 702, 706**

49.    Oliver repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

50.    Oliver is not a flight risk nor is he a danger to the community. Respondents' detention of Oliver is therefore unjustified and unlawful. Accordingly, Oliver is being detained in violation of his Constitutional right to Due Process under the Fifth Amendment.

### SECOND CLAIM

**Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution (Procedural Due Process); 5 U.S.C. §§ 702, 706**

51.    Oliver repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

52.    The Due Process Clause of the Fifth Amendment protects all "person[s]" from deprivation of liberty "without due process of law."

53.    The government made the reasoned decision to parole Oliver from detention while he pursued his asylum claim in the United States. The Due Process Clause entitles Oliver to

13

meaningful process assessing whether his detention is justified. The arrest and detention of Oliver

without an opportunity for Oliver to contest his detention in front of a neutral decisionmaker after

he had been living and working in the United States for over eight months provide insufficient

process and violates the Due Process Clause of the Fifth Amendment of the Constitution

### THIRD CLAIM

**Violation of the Fourth Amendment to the U.S. Constitution (unlawful arrest); 5 U.S.C. §§ 702, 706**

54.    Oliver repeats and re-alleges the allegations contained in all preceding paragraphs

of this Petition-Complaint as if fully set forth herein.

55.    Oliver was detained by federal immigration officials as removable when he entered

the United States. The government exercised its discretion under the Immigration and Nationality

Act to release, or parole, him while he litigated that charge in immigration court. At the time of

Oliver's arrest, he had been living at liberty pursuant to a parole determination by federal

immigration authorities.

56.    The government lacked reliable information of changed or exigent circumstances

that would justify his arrest after federal immigration authorities had already decided he could

pursue his claims for immigration relief at liberty. His re-arrest based solely on the fact that he is

subject to removal proceedings is unreasonable and violates the Fourth Amendment.

### FOURTH CLAIM

**Violation of the Administrative Procedure Act, 5 U.S.C. §§ 702, 706**

57.    Oliver repeats and re-alleges the allegations contained in all preceding paragraphs

of this Petition-Complaint as if fully set forth herein.

58.    The government's policy of targeting people who appear for their immigration

hearings for arrest in immigration courthouses is arbitrary and capricious. The Immigration

Courthouse Arrest Policy is an unreasoned departure from recent and longstanding agency policy and practice. The government has provided no reasoned explanation for this reversal.

59.     The Immigration Courthouse Arrest Policy also fails to consider multiple important aspects of the problem. Arresting people who appear for their court proceedings will disincentivize people from attending those proceedings, even where they have meritorious claims for relief, and impede the fair administration of justice. The Immigration Courthouse Arrest Policy also fails to consider the fact that people who appear for their immigration proceedings are not flight risks and therefore do not need to be detained while their proceedings are pending.

60.     Oliver's arrest pursuant to the government's policy are agency actions that violate the Administrative Procedure Act, 5 U.S.C. § 706(2).

**FIFTH CLAIM**

**Violation of the Immigration and Nationality Act and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706**

61.     Oliver repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

62.     The government's arrest of Oliver immediately after he exited an immigration court proceeding in which he was a party violates the common law privilege against civil arrests while coming to, attending, and returning from court. This common law protection is incorporated into the Immigration and Nationality Act.

63.     Therefore, the Policy is in excess of statutory authority because the INA does not authorize civil arrests in and around courthouses.

**PRAYER FOR RELIEF**

WHEREFORE, the petitioner respectfully requests that this Court:

1)  Assume jurisdiction over this matter;

2) Enjoin the respondents from transferring the petitioner away from the jurisdiction of this District pending these proceedings;

3) Declare that the petitioner's arrest and detention violates the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act, and the Immigration and Nationality Act;

4) Issue a Writ of Habeas Corpus ordering Respondents to immediately release the petitioner from custody;

5) Set Aside the respondents' revised Immigration Courthouse Arrest Policy, including as applied to the petitioner.

6) Award the petitioner reasonable attorneys' fees and costs for this action under the Equal Access to Justice Act, 28 U.S.C. § 2414; and

7) Grant the petitioner any other relief this Court deems just and proper.

Dated: June 6, 2025
    New York, N.Y.

/s/ Kerry Q. Battenfeld
Kerry Q. Battenfeld
Jillian E. Nowak
PRISONERS' LEGAL SERVICES OF NEW YORK
14 Lafayette Square, Suite 510
Buffalo, NY 14203
716- 844-8266
kbattenfeld@plsny.org

Respectfully submitted,

/s/ Sarah T. Gillman
Sarah T. Gillman
Sarah E. Decker
ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine Street, Ste. 801
New York, NY 10005
(646) 289-5593
gillman@rfkhumanrights.org

/s/ Amy Belsher
Amy Belsher
Elizabeth Gyori
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, Floor 19
New York, New York 10004
(212) 607-3300
abelsher@nyclu.org

*Attorneys for Petitioner*

16

## <u>VERIFICATION</u>

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have discussed with the Petitioner the events described in this Petition and Complaint. On the basis of those discussions, I hereby verify that the statements made in this Petition and Complaint are true and correct to the best of my knowledge.

Dated: June 6, 2025                                         /s/ Sarah T. Gillman
New York, NY                                                Sarah T. Gillman
                                                            ROBERT F. KENNEDY HUMAN RIGHTS
                                                            88 Pine Street, Ste. 801
                                                            New York, NY 10005
                                                            (646) 289-5593
                                                            gillman@rfkhumanrights.org

18

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

OLIVER ELOY MATA VELASQUEZ

**(b)** County of Residence of First Listed Plaintiff   Erie County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See attachment.

## DEFENDANTS

STEPHEN KURZDORFER; JOSEPH FREDEN; TODD LYONS; KRISTI NOEM

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

U.S. Attorney's Office, Western District of New York, 138 Delaware Avenue, Buffalo, NY 14202

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☒ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☒ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC § 2241
Brief description of cause:
Under the federal habeas statute, 28 USC § 2241, Petitioner challenges his immigration detention by the Respondents.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*

JUDGE _____ DOCKET NUMBER _____

DATE
June 6, 2025

SIGNATURE OF ATTORNEY OF RECORD
/s/ Sarah Gilman

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLIVER ELOY MATA VELASQUEZ<br><br>*Petitioner*,<br><br>    v.<br><br>STEPHEN KURZDORFER, in his official capacity as Acting Field Office Director, Buffalo Field Office, Enforcement and Removal Operations, U.S. Immigration & Customs Enforcement; JOSEPH FREDEN, in his official capacity as Deputy Field Office Director of the Buffalo Federal Detention Facility; TODD LYONS, in his official capacity as Acting Director U.S. Immigrations and Customs Enforcement; and KRISTI NOEM, in her official capacity as U.S. Secretary of Homeland Security; U.S. Department of Homeland Security; U.S. Immigrations and Customs Enforcement,<br><br>    *Respondents*. | Case No. _____<br><br>**ATTACHMENT TO CIVIL COVER SHEET** |

**I.(c).** Attorneys *(Firm Name, Address, and Telephone Number)*

New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300

Prisoners' Legal Services of New York
14 Lafayette Square, Suite 510
Buffalo, NY 14203
(716) 844-8266

Robert F. Kennedy Human Rights
88 Pine St., 8th Fl., Ste. 801
New York, NY 10005
(646) 289-5593